# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| GENNA T. PIERSON,<br><br>        Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>        Defendant. | No. 17-CV-00070-LRR<br><br>**REPORT AND<br>RECOMMENDATION** |

Plaintiff, Genna T. Pierson ("claimant"), seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Claimant contends that the Administrative Law Judge (ALJ) who heard her claim erred in determining that she was not disabled.

For the reasons that follow, I recommend that the District Court **affirm** the Commissioner's decision.

## I.     BACKGROUND

I adopt the facts set forth in the parties' Joint Statement of Facts and therefore only summarize the pertinent facts here. (Doc. 13). Claimant was born in January 1972, making her forty-two years old when she allegedly became disabled and forty-four years old at the time of the ALJ's decision. (AR 30).[1] Claimant did not graduate from high school, but she earned a general equivalency diploma (GED). (AR 41). Claimant previously worked as a transporter at a hospital for eighteen years. (AR 49).

---

[1] "AR" refers to the administrative record below.

On March 28, 2014, claimant protectively filed an application for disability insurance benefits. (AR 20; Doc. 13, at 2). She alleged a disability onset date of March 5, 2014. (*Id.*). The Social Security Administration denied the claim initially and on reconsideration. (AR 77-100). On February 5, 2016, Administrative Law Judge ("ALJ") Julie K. Bruntz held a hearing on the matter. (AR 38-75). Claimant offered testimony and was represented by counsel. (*Id.*). Testimony was also heard from Carma Mitchell, a vocational expert. (AR 70-75). On March 16, 2016, the ALJ issued a decision denying the claim. (AR 20-31). On April 27, 2017, the Appeals Council denied review. (AR 1-5). The ALJ's decision therefore became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

On June 27, 2017, claimant timely filed the instant complaint in this Court. (Doc. 3). By January 4, 2018, the parties had filed their briefs. (Docs. 14-15). On February 5, 2018, the Court deemed the case fully submitted and ready for decision. The Honorable Linda R. Reade, United States District Court Judge, referred this case to me for a Report and Recommendation.

## II. *DISABILITY DETERMINATIONS AND BURDEN OF PROOF*

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual has a disability when, due to her physical or mental impairments, "[she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of

inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. (*Id.* § 404.1572). "Gainful" activity is work done for pay or profit, even if the claimant did not ultimately receive pay or profit. (*Id.*).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and mental impairments. *Id.* § 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. An impairment is not severe if it does "not significantly limit [a] claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. These include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. 404.1521 (2015).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the

impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can still do her past relevant work, then she is considered not disabled. (*Id.*). Past relevant work is any work the claimant performed within the fifteen years prior to her application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. (*Id.* § 416.960(b)). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite . . . her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted). The RFC is based on all relevant evidence. The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2). The Commissioner must show not only that the claimant's RFC will allow her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591. If the claimant can make the adjustment, then the Commissioner will find the claimant not disabled. At Step Five, the Commissioner has

the responsibility of fairly and fully developing the record before making a determination about the existence of a disability. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. THE ALJ'S FINDINGS

The ALJ made the following findings at each step with regard to claimant's disability status:

At Step One, the ALJ found that claimant had not engaged in substantial gainful activity since her alleged onset date. (AR 22).

At Step Two, the ALJ found that claimant suffered from the following severe impairments: "depressive disorder and anxiety disorder." (*Id.*). The ALJ further discussed claimant's other documented impairments and found those impairments did not meet the definition of "severe" impairments under Social Security Administration regulations. (AR 22-23).

At Step Three, the ALJ found that none of claimant's impairments met or equaled a presumptively disabling impairment listed in the regulations. (AR 23-24).

At Step Four, the ALJ found that claimant had the RFC to perform a full range of work at all exertional levels with the following limitations: "[claimant] would be limited to simple, routine tasks. She could have only short-lived, superficial contact with the public, coworkers, and supervisors." (AR 24). Based on this RFC determination, the ALJ determined that claimant was unable to perform her past relevant work. (AR 29-30).

At Step Five, the ALJ found that, despite claimant's RFC, there were jobs that existed in significant numbers in the national economy claimant could still perform, including laundry worker, detailer (cleaning and refurbishing vehicles), and laborer of

stores. (AR 30-31). Therefore, the ALJ concluded that claimant was not disabled. (AR 31).

## IV.     THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645 (internal quotation marks omitted). The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence . . . [that] allows for the possibility of drawing two inconsistent conclusions[;] thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations and internal quotation marks omitted).

In determining whether the Commissioner's decision meets this standard, a court "consider[s] all of the evidence that was before the ALJ, but . . . do[es] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The Court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the Court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health*

*& Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The Court, however, "do[es] not reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the Court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the Court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the Court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The Court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

Claimant alleges the ALJ committed reversible error in assessing claimant's RFC because (1) the ALJ failed to evaluate properly the work-related limitations from the treating psychiatrist, Dr. Bryan Netolicky, M.D. (Doc. 14, at 4-14); and (2) the RFC assessment was not supported by substantial medical evidence from a treating or examining source (Doc. 14, at 14-16).

### A. *Dr. Netolicky's Opinions*

Claimant argues that the ALJ should have afforded Dr. Netolicky's opinions controlling weight, instead of little weight. (Doc. 14, at 4-14). Claimant alternatively argues that, if not entitled to controlling weight, Dr. Netolicky's opinions should have been afforded great weight.

"A treating physician's opinion is given controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'" *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (alteration in original) (internal quotation marks omitted) (quoting *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009)); 20 C.F.R. § 404.1527(d)(2). "Even if the [treating physician's] opinion is not entitled to controlling weight, it should not ordinarily be disregarded and is entitled to substantial weight." *Samons v. Astrue*, 497 F.3d 813, 818 (8th Cir. 2007). A treating physician's opinion, however, "does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). "It may have 'limited weight if it provides conclusory statements only, or is inconsistent with the record.'" *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015) (quoting *Samons*, 497 F.3d at 813). "The ALJ 'may discount or even disregard the opinion . . . where other evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" *Id.* (quoting *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015)). Ultimately, an ALJ must "give good reasons" for the weight given to a treating physician's opinion. 20 C.F.R. § 404.1527(d)(2); *See also Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000) ("Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation.").

In a Medical Source Statement dated May 29, 2015, Dr. Netolicky opined that claimant was unable to meet competitive standards in maintaining regular attendance and being punctual; sustaining an ordinary routine without special supervision; adhering to basic standards of neatness and cleanliness; working in coordination with or proximity to others without being unduly distracted; completing a normal workday and workweek without interruptions from psychologically based symptoms; accepting instructions and

responding appropriately to criticism from supervisors; and dealing with normal work stress. (AR 290-95, Doc. 13, at 10-11). Dr. Netolicky further opined that claimant was moderately limited in activities of daily living and maintaining concentration, persistence, or pace, and markedly limited in maintaining social functioning. (AR 294). Dr. Netolicky anticipated claimant's impairments would cause her to miss work more than four days per month. (*Id.*) On February 9, 2016, Dr. Netolicky confirmed that his opinions in the Medical Source Statement were still accurate. (AR 364).

Claimant argues the ALJ would have found claimant disabled had the ALJ accepted any of a number of Dr. Netolicky's work-related limitations. (Doc. 14, at 6). The vocational expert testified there would be no work available for an individual if: (1) the individual missed two or more days of work per month; (2) the individual needed frequent unscheduled breaks throughout the workday in addition to regularly-scheduled breaks; or (3) the individual needed to work in total isolation. (AR 72). The vocational expert also testified that an individual would not be competitively employable if the individual was unable to maintain attention for two hours or was off task for twenty percent of the average workday. (AR 74).

I find substantial evidence in the record as a whole supports the ALJ's decision to give Dr. Netolicky's opinions little weight. First, the ALJ found inconsistent that Dr. Netolicky treated claimant since 2008 but offered no rationale as to why claimant was unable to work starting in March 2014. (AR 26). In May 2008, claimant reported that she had been dealing with anxiety all of her life, and Dr. Netolicky determined that her depression "seem[ed] to stem from situational problems or from the anxiety itself." (AR 361-63). Claimant was able to work despite her anxiety and depression for many years— she worked as a transporter at St. Luke's Methodist Hospital from 1997 until March 5, 2014. (AR 169-71).

9

The record provides no indication of a significant deterioration in claimant's condition around claimant's alleged onset date. In April 2013, Dr. Netolicky noted that claimant's mood was neutral, her affect was full, her eye contact was good, her insight and judgment were fair, her thought processes were linear, and her cognition, memory, and appearance were normal. (AR 273). Claimant was taking care of her husband after his "botched surgery," but claimant's mindset appeared to be "good despite stressors." (*Id.*). In August 2013, nothing had changed in regard to claimant's mood, affect, eye contact, insight and judgment, thought process, cognition, memory, and appearance. (AR 272). Dr. Netolicky noted that claimant was "feeling better now" and "stable overall despite stressors." (*Id.*). In January 2014, claimant's mood was frustrated, but the status of her affect, eye contact, insight and judgment, thought processes, cognition, memory, and appearance remained unchanged. (AR 271). Dr. Netolicky noted claimant was missing work because she was taking care of her husband and daughter, but she was still functioning at her job. (*Id.*). In March 2014, after claimant quit her job, she appeared disheveled and dysphoric, but her eye contact, thought processes, insight, and judgment remained unchanged. (AR 270). Dr. Netolicky noted that claimant was taking care of her daughter and that claimant expressed a desire to work again, but not at St. Luke's. (*Id.*). At the hearing before the ALJ, claimant testified she did not know why she picked March 5, 2014, as her onset disability date. (AR 43).

The fact that claimant worked for at least six years while receiving treatment for her anxiety and depression, coupled with the absence of any evidence of significant deterioration in her condition around her alleged onset date, demonstrates some evidence of an ability to work. *See Schultz v. Astrue*, 479 F.3d 979, 982 (8th Cir. 2007) ("Absent a showing of deterioration, working after the onset of an impairment is some evidence of an ability to work.").

Second, the ALJ concluded that Dr. Netolicky's notes reflect that situational factors are part of claimant's difficulties. (AR 26). "Depression and anxiety brought about by temporary situational factors are not typically thought of as a valid basis for a disability claim." *Robertson v. Astrue*, 2013 WL 353088 (W.D. Mo. Jan. 29, 2013) (unpublished) (citing *Gates v. Astrue*, 627 F.3d 1080, 1082-83 (8th Cir. 2010)); *see also Dunahoo v. Apfel*, 241 F.3d 1033, 1039-40 (8th Cir. 2001). Dr. Netolicky's treatment records reflect consistent discussion of increased stressors and, subsequently, exacerbated symptomology. (AR 26; *see, e.g.*, 294, 319, 324, 326, 328-29, 343, 348, 357, 363). "Appointments frequently centered around discussion of the claimant's psychological stressors, including strained relationships with family, providing care for her young daughter, and providing care for her husband who was in poor health." (AR 26). When situational stressors were absent, however, Dr. Netolicky's records show claimant's mood was stable. (*See, e.g.*, 330, 339-40, 344-47, 350-51, 353-56).

Third, the ALJ found that Dr. Netolicky's records indicate that prior to quitting her job, claimant was missing work to care for her young daughter and/or disabled husband. (AR 26-27, 271). This finding is inconsistent with Dr. Netolicky's opinion in his Medical Source Statement, which claimed that claimant's anxiety interfered with her regular attendance at work. (AR 293).

Finally, the ALJ concluded "Dr. Netolicky's assessments suggesting severe workplace difficulties [were] not . . . supported by his mental status findings, which were generally unremarkable." (AR 27). A physician's opinions are entitled to less weight, or no weight, when their treatment notes are inconsistent with their ultimate opinions. *See Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (holding the ALJ properly discounted the weight given to a treating physician when the physician's opinion was inconsistent with the physician's own treatment notes and other medical opinions); *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006) ("A treating physician's own

inconsistency may also undermine his opinion and diminish or eliminate the weight given his opinions."); *Garza v. Barnhart*, 397 F.3d 1087, 1088-89 (8th Cir. 2005) (holding that a physician's opinion is entitled to less weight when it is inconsistent with the physician's own findings). As noted above, Dr. Netolicky's opinions in his Medical Source Statement suggested claimant would experience severe workplace difficulties. Dr. Netolicky, however, repeatedly noted claimant's affect was full or somewhat restricted; thought processes were linear; speech was regular in rate and rhythm; eye contact was good; and insight, judgment, cognition, memory, appearance, and psychomotor activity were all within normal limits. (*See generally* AR 26; 269-73, 286-87, 322, 324, 326-34, 336, 338-41, 343-60, 362). It is also noted that the record contains no evidence of inpatient hospitalizations for psychiatric symptoms during the adjudicative period. (AR 29).

I find the ALJ gave good reasons for affording little weight to Dr. Netolicky's opinions. I further find the ALJ properly acted within her zone of choice in concluding that, although claimant experiences some limitations, Dr. Netolicky's "mental status findings . . . do not appear to reflect a level of impairment beyond the [RFC]." (*Id.*).

### B. *Substantial Medical Evidence*

Claimant alleges that the RFC is not supported by substantial medical evidence because the ALJ did not rely on a treating or examining source opinion. (Doc. 14, at 14-16). In support of claimant's argument, claimant cites to *Nevland v. Apfel*, 204 F.3d 853 (8th Cir. 2000), and the ALJ's duty to fully develop the record. In *Nevland*, the Eighth Circuit Court of Appeals stated:

> In the case at bar, there is no *medical* evidence about how [claimant's] impairments affect his ability to function now. The ALJ relied on the opinions of non-treating, non-examining physicians who reviewed the reports of the treating physicians to form an opinion of [claimant]'s RFC. . . . In our opinion, the ALJ should have sought such an opinion from [claimant's] treating physicians or, in the alternative, ordered consultative

> examinations, including psychiatric and/or psychological evaluations to assess [claimant]'s mental and physical residual functional capacity.

*Nevland*, 204 F.3d at 858 (emphasis in original). This case, however, does not present a *Nevland* issue because the record contains opinions from treating and consultative sources. Specifically, the record contains opinions from Dr. Netolicky, her treating physician, and Dr. Harlan Stientjes, Ph.D., a consultative examiner. "In other words, the record was fully developed, but the ALJ did not give the opinions the weight that [claimant] argues they deserve." *Morrow v. Berryhill*, No. C16-2023-LTS, 2017 WL 3581014, at *7 (N.D. Iowa Aug. 18, 2017).

"Where an ALJ does not rely on opinions from treating or examining sources, there must be some other medical evidence in the record for the ALJ's opinion to be supported by substantial medical evidence on the record." *Shuttleworth v. Berryhill*, No. 17-CV-34-LRR, 2017 WL 5483174, at *7 (N.D. Iowa Nov. 15, 2017) (citing *Harvey v. Barnhart*, 368 F.3d 1013, 1016 (8th Cir. 2004)). "However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citations omitted).

Here, though limited, the ALJ relied on some evidence in addition to the non-examining state agency consultants' opinions. In making her RFC determination, the ALJ "relied on the overall record, including . . . medical evidence received at the hearing level." (AR 29). It appears the ALJ thoroughly reviewed the medical records and incorporated those records into her decision. *See* AR 25-29; *Hensley*, 829 F.3d at 932 (finding treatment records constitute affirmative medical evidence supporting RFC assessment). The ALJ also attributed little weight to the opinions of the consultative examiner, Dr. Stientjes, and Dr. Netolicky—which is greater than no weight. *See Shuttleworth*, 2017 WL 5483174, at *7. Therefore, I find the ALJ's opinion to be supported by substantial medical evidence in the record.

## VI. CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **affirm** the ALJ's determination that claimant was not disabled, and enter judgment against claimant and in favor of the Commissioner.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 28th day of March, 2018.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa